Turkey, J.,
delivered tlie opinion of the court:
This canso ivas decided at a former -day of the term, and is again before us on a petition to rehear.
The facts are, on the 18th day of June, 1866, the plaintiff in error, by its president, John R. Branner, and its secretary and treasurer, John Keys, executed to Samuel Shoemaker, its note, payable on demand, interest payable-quarterly, for twenty-five thousand dollars, with interest at 8 per cent. [This note was made while the act of 1869-70, ch. 69, allowing- a conventional rate of interest not to exceed ten per cent, per annum, was in force, and the note was therefore valid. Said act was repealed by the act of 1877, ch. 21]. At the time of the delivery of the note to Shoemaker, Branner, the president, hypothecated bonds belonging to himself, as security for its payment, with, power to Shoemaker to sell, etc., in. ease of failure of the company to pay the note. Branner died in Reibruaxy, 1869, *402 leaving a will appointing George M. Branner, Benjamin M. Branner, and Jolm Talbot, executors, who qualified.
In June, 1809, the executors paid to Shoemaker the amount of the note, with interest. This payment is shown to have been made “to prevent a sacrifice of the bonds, because, according to the terms upon which said bonds were hypothecated, Shoemaker had the right to sell the bonds a,t private or public sale without notice'.” On the payment to Shoemaker, he indorsed on the note, “Pay to B. M. Branner, G. M. Branner, and John Talbot, executors of John R. Branner, deceased, the within mentioned sum. (Signed) Samuel hi. Shoemaker.”
At the October term, 1872, suit was brought by the executors to recover of the plaintiff in error the amount so paid by them.
'To the original and amended declarations several pleas are pleaded.
On the 30th of October, 1871, plaintiff in error filed iis bill in the chancery court at Knoxville, against the executors, alleging that John R. Branner, as its president, received a large number of bonds issued by the state of Tennessee, with coupons attached, in aid of said company, for which he never accounted. “lie sold many of these bonds, but to whom, when or what price, company does not know.
“According to the books of the corporation, kept under Branner’s direction, he is charged with a balance due from him, proceeds of said bonds so sold by him, of $13,547.08, which company alleges is due and owing from his estate.
“That about the 18th of July, 1866, the said John R. Branner took and converted four Tennessee bonds, of one thousand dollars each, then worth 70 cents on the dollar, and the property of the East Tennessee & Virginia Railroad Company; that he had never accounted for them, or auy of them.
“At about the same time, he, without authority, con *403 verted to bis own use, or loaned to bis brother, the defendant, George M. Branner, ten other bonds of the State of Tennessee, of one thousand dollars each, the property of East Tennessee & Virginia Railroad Company,, and has never accounted therefor. About the same time he exchanged twelve other bonds of the state belonging to said company, of one thousand dollars each, for thirteen bonds of one thousand dollars each, issued by the Nashville & Chattanooga Railroad Company, and indorsed by the State of Tennessee, which he never accounted for, etc.
“That said John R. Branner, while acting as president and financial agent oi the East Tennessee & Virginia Railroad Company, fraudulently and negligently and without authority, placed one hundred bonds, issued as aforesaid, by the State of Tennessee, to the East Tennessee & Virginia Railroad Company, of one thousand dollars each, with C. Rowell, Green & Co., an insolvent banking firm of New York city, and negligently and fraudulently failed to withdraw’ them after he knew that -the said C. Powell, Green & Co. was not a safe and solvent depository for them, and that by reason of ibis said fraudulent and negligent conduct, the same were lost to said company.”
Praying for an account, etc.
On 13th of January, 1878, an amended bill was filed, alleging: “During his life, the said John R. Branner, as president of the East Tennessee & Virginia Railroad Company, on the 18th of June, 1806, executed and delivered the promissory note of said company to Samuel M. 'Shoemaker, for $25,000, payable on demand. Company understands he died, leaving this note unpaid. After his death and after the qualification of the defendants as his executors, and after complainant had succeeded to all the rights of the East Tennessee, Virginia & Georgia Railroad Company, and after negotiations for the settlement of John R. JBranner’s accounts were begun and carried on between complainant’s authorized agents and defendants, in which it was understood and agreed that defendants, as executors, *404 wore to pay and discharge said note to Shoemaker, and that the same would be allowed them as so much paid by them on the balance due from their testator, and it was upon this understanding and agreement defendants paid the note due Shoemaker. But in violaton of this understanding and agreement, and with the view of perpetrating a deliberate fraud on complainant’s rights, and under the belief that company is bound and they are not, defendants, in their character as executors, now falsely and fraudulently allege that they purchased said note and sued company in the circuit court.” And, “in violation of this undertaking, defendants have pleaded and are relying on, the statute of limitations as a bar to complainant’s rights, while they are, in manner aforesaid, fraudulently endeavoring to collect the Shoemaker note.”
Braving “for an injunction to stay the further prosecution of defendant’s suit for the collection of the Shoemaker note; for a settlement of accounts between complainant and defendants as executors of Johoi.R. Branner; for sucb decree over as shall appear to be due to complainant, and for general relief.”
As executors, tbe defendants pleaded the statute of limitations of two years and six months since their qualification as executors, and before the filing of the bills. The chancellor sustained the plea, “but with leave to company to prosecute the suit if it chose so to do against the executors; to enjoin them from prosecuting the suit at law on the $25,000 note alleged to have been obtained .by breach of good faith upon the part of the executors.”
From this decree was an appeal to this court, where there was an affirmance with the same leave to company, of which it elected not to avail, and the bills were dismissed.
In the trial at law the plaintiff in error relied upon the pleas of nil debet, non assumpsit, and payment. There was judgment for the plaintiff, and appeal by the company.
It is clear from the record, as well as from the admissions of counsel, that the bonds hypothecated to Shoemaker were *405 the bonds of J. I\. Brunner, in his individual right, and that the payment of the note by the executors to Shoemaker, was absolutely necessary to the redemption of the bonds. The payment was not officious, as argued.
Under the facts disclosed in the record we can see no way of relief for plaintiff in error.
It is argued here that notwithstanding the adjudication in the chancery cause, the company may, in this suit, defend itself under tire plea of non assumpsit.
These transactions have no relation to or connection with each other. There is nothing in the record upon which the law will imply a promise from defendants in error, or their testator, to pay the amount to Shoemaker as a credit on Eranner’s indebtedness to the company, or that when paid, it should be construed a payment on such indebtedness.
Because one holds money, bonds, or property of another, and while so holding, pays the debt of the other, the law does not presume even prima facie that such payment is a discharge of the obligation as to the- estate so held by the party paying the debt.
The transactions out of which this litigation grows are totally distinct in their natures and characters, and come of wdiolly different dealings between the parties, and were not had in view of each other’s existence or because of it.
'While it is true that in a suit upon either, the other might, have been relied upon as a set-off, still the parties could have elected independent suits and could not have been compelled to plead set-off.
While we have carefuly studied the briefs of counsel who petition to rehear, we are unable to find a rule by which the payment to Shoemaker can be construed to be a payment by the executors on the indebtedness of Bran-ner to plaintiff in error. The sole purpose of the executors was to get possession of the bonds as part of the estate of the testator, to prevent their sacrifice by sale, and to administer them for the benefit of the estate.
*406 Besides, tbe questions sought to be made defensive, in this action were adjudicated in tbe chancery cause. Tbe effect here is a repetition of tbe efforts in chancery to have an account from the estate of Branner, which was adjudged against tbe plaintiff in error, who declined to litigate its charge of bad faith on. the part of the executors in refusing to carry out an agreement to pay the Shoemaker note, and receive credit on the indebtedness of Bran-ner's estate.
Dismiss the petition.